IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOHN LOVELACE, JR.     PLAINTIFF

v.     No. 3:22CV209-GHD-JMV

SHERIFF GREG POLLAN, ET AL.     DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of John Lovelace, Jr., who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the defendants used excessive force against him, arrested and detained him without probable cause, failed to timely hold an initial appearance after his arrest, and took his property without due process of law.

The remaining two defendants have filed a motion [78] for summary judgment; the plaintiff has responded to the motion, and the defendants have replied. The matter is ripe for resolution. For the reasons set forth below, the motion [78] by the defendants for summary judgment will be granted, and judgment will be entered in favor of the defendants in all respects.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions,

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan*, 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*,

177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[2]

In June of 2020 plaintiff John Lovelace, Jr. was incarcerated in Memphis, Tennessee. *Memorandum Opinion*, Doc. 17. On or about November of 2021, while incarcerated in Memphis, he posted bond so that he could remain out of jail while awaiting a Calhoun County, Mississippi hearing set for March 28, 2022. *Id.* Lovelace alleges that on the morning of the hearing, he and a Shelby County Deputy informed the Calhoun County Clerk's Office that the plaintiff had been the victim of a "felonious crime" and would not be able to attend the hearing; Lovelace did not state who perpetrated the "felonious crime" against him or what the crime was. *Id.* According to the record, however, Lovelace missed the hearing because he was arrested for vandalism and driving with a suspended license. *Deposition Transcript of John Lovelace*, pg. 20.

Lovelace alleges that someone from the Clerk's Office informed him that no warrant would issue regarding his absence from the hearing. Doc. 17. The Shelby County Sheriff's Office, however, informed the Calhoun County Circuit Court that Lovelace had been arrested for misdemeanor vandalism, and the Circuit Judge issued a warrant for his arrest (likely for violation of the ordinary

---

[2] The court has drawn the undisputed material facts from the plaintiff's amended complaint and various supplements, the defendants' Memorandum [79] in support of their motion for summary judgment, and the court's memorandum opinion [17].

terms of a bond agreement – both for failure to appear for the hearing and being arrested for another offense). *Id.* On April 13, 2022, Lovelace was arrested on that warrant by the Shelby County Fugitive Recovery Team and transported to the Calhoun County Jail.³ *Id.*

According to Lovelace, upon his arrival at the jail he was placed in the drunk tank and lay on the bunk. *Id.* He alleges that, as he lay there, Jail Administrator Andy Eubanks stuck his arm through the tray hole and sprayed him with mace. *Id.* He states that the mace did not bother him until it got in his hair – which then touched his eyes – and then caused burning in his eyes. Exhibit A,⁴ *Deposition Transcript of John Lovelace*, pg. 25. He was immediately permitted to shower to clean off the chemical agent, and he has not alleged any lasting harm from its use. *Id.* at 26.

He further alleges that defendant Eubanks took cash from his wallet – but does not remember the amount, stating, "How much it was? Six hundred dollars – I don't – I don't know. I will say I don't know. But you said it could've been $60. It could've been $6. I don't know. But it – but it was an amount of money." Exhibit A. *Deposition Transcript of John Lovelace*, pg. 27. Lovelace alleges that he told the Fugitive Recovery Team "to put my money in my wallet and bring the wallet with us… So I can have money on my books." *Id.* at 24.

Lovelace further speculates, "So I felt like, being that he [Andy Eubanks] was the last person I saw in possession of my wallet, that if my money is not in my wallet, he must've been the one that took it." *Id.* Additionally, Lovelace alleges that Eubanks failed to process him into the computer system for nine days. *Memorandum of Opinion,* Doc. 17. As he was not placed in the system, he was

---

³ Lovelace has offered no reason why the Calhoun County Circuit Court's warrant might have been invalid, as (1) he failed to appear at a hearing before that court, and (2) he was arrested for another offense – either of which constitutes a valid basis for the warrant.

⁴ The exhibits referenced in this memorandum opinion may be found attached to the defendants' motion [78] for summary judgment.

not scheduled for an initial appearance, arraignment, or bond hearing during that time. *Id.* Lovelace states that when his father checked to see why there was such a long delay without a court hearing, the Circuit Clerk told him that their office was unaware that Lovelace had been arrested. *Id.*

On April 26, 2022, Lovelace was transported to the Lafayette County Circuit Court, and attorney Ben Suber was appointed to represent him. *Id.* Lovelace explained that he was trying to plead out to charges in Calhoun, Lafayette, Pontotoc, and Union Counties. *Deposition Transcript of John Lovelace*, pg. 10, 17-21. He was then escorted to a waiting room, where he alleges that Sheriff Greg Pollan told him "Lovelace, you were absconding from Memphis[….] [T]hey're coming to get you to make sure you don't miss it." *Deposition Transcript of John Lovelace*, pg. 33. Lovelace interpreted this statement to mean that Tennessee authorities had placed a hold on him (so that Calhoun County could not release him until the Tennessee authorities arrived to pick him up to face charges there.) *Memorandum Opinion*, Doc. 17. It appears as if the hold was in response to a Parole Violation Report authored by Tynessia Love (Shelby County, TN) on March 30, 2022. Exhibit B. Violation of Parole (3/30/2022). According to Lovelace, Sheriff Pollan then instructed a deputy to take him back to jail. *Deposition Transcript of John Lovelace*, pg. 33.

Lovelace also alleges that his father inquired of Tennessee authorities for over two months, but the Tennessee Department of Corrections and the Shelby County Fugitive Department both denied placing a hold on Lovelace or speaking with Sheriff Pollan. *Id.* at 20. He alleges that he relayed this information to the Sheriff, who took no action on it. *Memorandum Opinion,* Doc. 17. Lovelace was transported to the Lafayette County Detention Center on July 6, 2022, but remained in jail "because Calhoun County has still refused him his due process." *Id.* Shortly thereafter, Lovelace was transferred to Whiteville Correction Facility in Tennessee where he is currently incarcerated on charges from 2018 and 2019. *Id.*

## Qualified Immunity

The defendants in this case have raised the defense of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir.2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836-37.

A "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012). The plaintiff must "speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

### Excessive Force Against Pretrial Detainees

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395, n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). To state a claim of excessive force, a pretrial detainee must allege: (1) that the defendant had a "purposeful, knowing, or possible a reckless state of mind" as to his "physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world," and (2) that the defendant's intentional actions in the physical world were *objectively unreasonable*. *Id.* at 2472. Put another way, the plaintiff must allege that the defendant knowingly or purposefully use force – and that the force was objectively unreasonable. *Id.* at 2473.

Objective reasonableness turns on the "facts and circumstances of each particular case," from the perspective of a reasonable officer at the scene, including what that officer knew at the time – and without the crystal clarity of hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The "management by a few guards of large numbers of prisoners" in a jail "may require and justify the occasional use of a degree of intentional force." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (citing *Johnson v. Glick*, 481 F.2d 1028 (2$^د$ Cir. 1973)). The court must also consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Indeed, "[r]unning a [jail] is an inordinately difficult undertaking," *Turner v. Safley*, 482

U.S. 78, 84–85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. ——, ——, 132 S.Ct. 1510, 1515, 182 L.Ed.2d 566 (2012). Officers facing disturbances in a jail "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S., at 397, 109 S.Ct. 1865. A judge, who has ample time to reflect on the matter in the solitude of chambers, must be mindful of these considerations when deciding whether an officer's use of force was objectively reasonable.

Even in the absence of an expressed intent to punish, a pretrial detainee may nonetheless prove a claim of excessive force by showing that the guard's actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose." *Bell*, 441 U.S. at 561, *see also Block v. Rutherford*, 468 U.S. 576, 585-586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). In deciding whether the force used was objectively reasonable, the court may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*. 135 S. Ct. at 2473. This list is not exhaustive, merely illustrative. *Id*.

In addition, although a pretrial detainee is not required to show "a significant injury," *de minimis* injuries like bruises, contusions, and abrasions are insufficient to maintain an excessive force claim under Fifth Circuit precedent. *See Westfall v. Luna*, 903 F.3d 534, 547, 549-50 (5th Cir. 2018)

(citations omitted); *see also Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011)[5] (holding that a viable Fourteenth Amendment excessive force claim requires that "the plaintiff [must] have suffered at least some form of injury that is more than *de minimis*") (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that "[t]he injury must be more than a *de minimis* injury in the context of a Fourth Amendment excessive-force claim)).

In this case the plaintiff has alleged brief pain in his eyes from the alleged use of chemical agent by Administrator Eubanks, which the plaintiff washed away just after he was sprayed. The Fifth Circuit has upheld a district court's ruling that, "[w]here injuries from taser or pepper spray are concerned, a plaintiff must allege some long-term effect and not mere pain" to demonstrate more than a *de minimis* injury. *Cornett v. Ward*, No. 3:18-CV-1395-S, 2020 WL 906290, at * (N.D. Tex. Feb. 25, 2020) (citing *Martinez v. Nueces Cnty., Tex.*, No. 2:13-CV-178, 2015 WL 65200, at *10 (S.D. Tex. Jan. 5, 2015) (Ramos, J.), *aff'd sub nom. Martinez v. Day*, 639 F. App'x 278 (5th Cir. 2016), *as revised* (May 12, 2016)). When a pretrial detainee fails to adduce evidence showing that he suffered a cognizable injury, his claim of excessive force must fail. *Martinez, supra*. Temporary pain and burning in the plaintiff's eyes from the chemical agent is a *de minimis* injury; as such, his allegations of excessive force must be dismissed for failure to state a claim upon which relief could be granted.

In addition, even if Lovelace had stated a valid excessive force claim against defendant Eubanks, those allegations contain neither "factual particulars" as to Sheriff Pollan's actions or omissions, *Schultea*, 47 F.3d at 1432, nor any "operative facts" regarding his involvement in the

---

[5] The court notes that "unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)." 5th Cir. R. 47.5.4.

bystander liability claim. *See Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (plaintiff must plead operative facts to support accomplice liability). Therefore, Lovelace did not plead sufficient facts to state a Section 1983 bystander liability claim against Sheriff Pollan, and those allegations will be dismissed. In sum, the plaintiff's allegations regarding the use of mace fail to state a valid constitutional claim, and the defendants are shielded by qualified immunity. For these reasons, the plaintiff's allegations of excessive force through the use of mace will be dismissed.

### Taking of Property Without Due Process of Law

Lovelace alleges that Administrator Eubanks took cash from his wallet, but he does not remember the amount. *Deposition Transcript of John Lovelace*, pg. 27. The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the Parratt/Hudson doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Thus, as to the plaintiff's claim regarding the taking of his property, the court must determine whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m). At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss.App.,2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in Johnson are legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id.* The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id.* The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id.*

Those facts mirror the facts in the present case. Lovelace alleges that he instructed the fugitive recovery team "to put my money in my wallet and bring the wallet with us…So I can have money on my books." *Deposition Transcript of John Lovelace,* pg. 24. In support of his taking of property claim, he states, "So I felt like, being that he [Andy Eubanks] was the last person I saw in possession of my wallet, that if my money is not in my wallet, he must've been the one that took it." *Id.* Lovelace further alleges that "it could have been $60, $600, or $6,000. I don't know how much it was an amount of money." *Id.* at 27. Regardless, the plaintiff in this case has an adequate remedy under state law, and his claims for the taking of his property without due process of law must be dismissed.

### Supervisor Liability: Delay in Initial Appearance

Lovelace's § 1983 allegation against Sheriff Pollan regarding a delayed initial appearance is based upon conduct in (1) failing to promulgate adequate policies in the records department; or (2) failing to train and supervise the employees in the records department. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for

failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

Though failure to train employees may rise to the level of an official government policy – giving rise to a claim under 42 U.S.C. § 1983, such claims are a rarity:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S.Ct. 1197.

*Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359–60, 179 L. Ed. 2d 417 (2011).

In this case, the plaintiff has not shown that Sheriff Pollan was directly involved in the plaintiff's Fourth Amendment claim arising out of a delay in having an initial appearance. Neither has he identified a policy, practice, or custom of causing such a delay – nor alleged facts regarding a deficiency in training law enforcement personnel regarding timeliness of obtaining initial appearances for arrestees. The plaintiff's failure to make such a showing requires dismissal of his claim regarding a delay in holding his initial appearance. *See Jones v. Lowndes County*, 678 F.3d 344 (5th Cir. 2012). This claim will therefore be dismissed as to Sheriff Pollan for failure to state a constitutional question – and under the doctrine of qualified immunity.

### Plaintiff's Allegations Against Jail Administrator Andy Eubanks
### Regarding the Timeliness of the Plaintiff's Initial Appearance

Administrator Eubanks enjoys qualified immunity as to the plaintiff's claim regarding delay in obtaining an initial appearance. In Mississippi, the right to an initial appearance is guaranteed under two statutes. Miss. Code Ann. § 99-3-17 reads, "[e]very person making an arrest shall take the offender before the proper officer without unnecessary delay for examination of his case." Further, under Miss. Unif. Rule of Cir. and Cnty. Court Prac. 6.03, "[e]very person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance." Again, Lovelace has not identified a county policy, practice, or custom of delaying inmates' initial appearances, as required to establish such a claim and overcome the defendant's qualified immunity defense:

> The delay of which [Plaintiffs] complain was caused by the unavailability of the judges at the specific time of the arrests and by their unannounced early departure on Monday. As we have explained, such actions have not been shown to set a county policy and cannot be a basis for liability of the named defendants. Under state law, it was [the Deputy's] responsibility to bring the plaintiffs before a judge in a timely manner. The record establishes a reasonable officer would not have believed that [the Deputy's] actions in attempting to fulfill that obligation violated the plaintiffs' constitutional rights under clearly established law. [The Deputy] is therefore entitled to qualified immunity.

See *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 352 (5th Cir. 2012).

In this case, as discussed more fully below, Lovelace was being held on outstanding charges and parole violations from five different jurisdictions. Hence, he was not being detained solely for new criminal charges, but for outstanding warrants and charges from other jurisdictions – all of which the District Attorney's Office were considering to formulate a single plea offer covering them all. A single instance of delay, as in this case, does not show that Administrator Eubanks established a policy, custom, or practice of delaying inmates' initial appearances. As such, this claim will be dismissed as to defendant Eubanks on the merits and under the doctrine of qualified immunity.

## Arrest Without Probable Cause

The Fifth Circuit applies the same standard to claims of false arrest and false imprisonment. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see also Peairs v. Jackson Cnty.*, No. 1:13-CV-402- HSO-RHW, 2015 U.S. Dist. LEXIS 129590, at *46 (S.D. Miss. Sept. 25, 2015). Both claims arise from the Fourth Amendment right to be free from unreasonable seizure of one's person. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). "To ultimately prevail on [a] section 1983 false arrest/false imprisonment claim, Plaintiff must show that [Defendants] did not have probable cause to arrest him." *Haggerty*, 391 F.3d at 655.

To prevail on a § 1983 claim for false arrest or imprisonment, a plaintiff must prove that Defendants did not have probable cause to arrest him. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). An officer establishes probable cause when

> facts and circumstances within the [his] knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

*Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). "When considering what a reasonable person would have concluded, [a court must] take into account the expertise and experience of the law enforcement officials." *United States v. Nunez-Sanchez*, 478 F.3d 663, 667 (5th Cir. 2007). It does not matter whether the offense is a felony or a misdemeanor – or whether the offense was committed in the officer's presence. *Sam v. Richard*, 887 F.3d 710, 715 n. 6 (5th Cir. 2018). Neither does it matter if the arrestee was ever charged or convicted of the crime for which the officer arrests him. *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015). Instead, "to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for any crime." *Id.*

**Probable Cause Existed to Arrest and Detain Lovelace**

In the present case, Lovelace was released on parole from Tennessee on September 22, 2021. A week later he was arrested in Pontotoc, Mississippi, for felony fleeing: evading a roadblock. Exhibit A. *Deposition Transcript of John Lovelace*, pg. 10. He was thus in violation of the conditions of his parole, as a universal parole condition is not to be arrested for a criminal offense during the parole period. On November 25, 2021, Lovelace was released on bond from Pontotoc, Calhoun, and Union Counties, but was arrested a week later for driving with a suspended license. *Id.* Again, as with parole, a universal condition for release on bond is not to be arrested for a criminal offense. He was also arrested for possession and transfer of a controlled substance. Exhibit C. Lovelace Summary of Charges at 3.

He was then detained in Calhoun County while prosecutors sorted out his numerous charges and violations from Calhoun, Union, Pontotoc, and Lafayette Counties. He accepted a plea deal involving all of the charges from the four counties on April 26, 2022 – and was then transported to Tennessee, where he is serving a 15-year sentence for charges from 2018 and 2019. Exhibit A. *Deposition Transcript of John Lovelace*, pg. 56. Given Lovelace's many pending charges at the time, his obvious parole and bond violations, the hold arising out of his Tennessee parole violation – and his multiple instances of failure to appear at his criminal proceedings[6] – Sheriff Pollan had ample probable cause to detain him while authorities unwound the multiple charges against him to arrive at his plea deal.

---

[6] *See* Exhibit A, Deposition Transcript of John Lovelace, pg. 20, regarding Lovelace's failures to appear for his criminal proceedings.

**Lovelace Did Not Allege Specific Facts to Support
His Claims for False Arrest and Illegal Detention**

Lovelace initially alleged that he "was arrested by the Calhoun County Sheriff's Department." He did not offer any specific "allegations of fact focusing specifically on the conduct of the individual" or individuals who arrested him, as required in a qualified immunity case. *Reyes*, 168 F.3d at 161. Indeed, he did not allege which individual defendant arrested him; instead, he now alleges only that he was picked up by a "Fugitive Recovery Team" out of Shelby County, Tennessee – not Calhoun County, Mississippi. *Deposition Transcript of John Lovelace*, pg. 24. Hence, the complaint contains no "factual particulars" of the alleged false arrest, *Schultea*, 47 F.3d at 1432, and it does not contain enough facts for the "court to draw the reasonable inference that [Sheriff Pollan or Jail Administrator Eubanks] are liable for the harm he has alleged." *Backe*, 691 F.3d at 648. Indeed, on the current record, *neither* remaining defendant participated in Lovelace's arrest, which was carried out by law enforcement authorities out of Shelby County, Tennessee.

As set forth above, whether the offense is a felony or a misdemeanor, was committed in the officer's presence, or whether the arrestee was ever charged or convicted of the crime for which the officer arrests him – if the officer has reason to believe the offense has been committed, then he has probable cause to arrest the suspect. *See Sam v. Richard*, 887 F.3d 710, 715 n. 6 (5th Cir. 2018) (does not matter whether offense was felony or misdemeanor, or whether offense was committed in officer's presence); *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015) (does not matter whether plaintiff was charged or convicted of the crime of arrest). Rather, "to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for any crime." *Id.*

As discussed in detail above, Lovelace had outstanding charges and parole violations from at least *five* different jurisdictions: Shelby County, Tennessee; Union County, Mississippi; Pontotoc

- 17 -

County, Mississippi; Lafayette County, Mississippi; and Calhoun County, Mississippi. Exhibit D. *Calhoun County Jail File of John Lovelace*. After being released in September of 2021 – and as a result of the parole violations – Lovelace is currently serving a fifteen-year sentence for the convictions for which he had been paroled. Put simply, the record reveals that the defendants had information at their disposal to establish that John Lovelace had committed multiple crimes and violations – and thus had probable cause to arrest and detain him. As such, the defendants' motion for summary judgment regarding the plaintiff's claims of seizure and detention of his person without probable cause will be granted.

## Conclusion

For the reasons set forth above, the motion [78] by the defendants for summary judgment will be granted, and judgment will be entered in favor of the defendants. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 27th day of January, 2024.

_____
SENIOR JUDGE